## Decker v. Philipsburg

*Edward L. Willard*, for plaintiff.

*Walter M. Swoope*, for defendant.

CAMPBELL, P. J., May 15, 1967.—On December 15, 1965, plaintiff police officer was suspended without pay, for failure to perform his duties, by the Mayor of Philipsburg Borough. The suspension notice indicated that it was in accordance with the Act of May 4, 1927, P. L. 519, art. XI, sec. 1127, as amended, and it specifically indicated that the suspension was to continue in effect until the next regular meeting of borough council to be held on January 3, 1966. (Actually, the Act of July 10, 1947, P. L. 1621, sec. 1127, was in effect. We deem this immaterial as the identical language describing the powers of the burgess over the police are contained in both statutes.) Plaintiff appeared at the council meeting and the question of the suspension was discussed. Plaintiff stood mute on advice of his attorney. Council took no action with respect to the mayor's suspension.

Immediately following the council meeting, plaintiff police officer was advised that his name appeared on the work schedule, whereupon he assumed his duties thereafter as a police officer and received his usual compensation therefor. He now seeks to recover in this action of assumpsit $183.19 in wages which he claims to be due him from December 15, 1965, to January 3, 1966, during which time he was suspended by

the mayor. The parties hereto, believing the matter at issue to be one purely of law, have asked the court to render a verdict based thereon.

The mayor of a borough has the power to suspend a police officer. The applicable statute in force when the suspension notice was given was the Act of July 10, 1947, P. L. 1621, sec. 1127, which reads as follows:

"The burgess may, for cause and without pay, suspend any policeman until the succeeding regular meeting of the council, at which time *or thereafter* the council may, *subject to the civil service provisions of this act, if they be in effect at the time, suspend,* discharge, *reduce in rank* or reinstate such policeman".

It is quite clear that the mayor, formerly called the burgess, has only a limited power of suspension, the term of which is limited by statute until the succeeding regular meeting of council. The suspension notice given to plaintiff so specified.

The establishment of a civil service commission did not deprive the burgess (mayor) of the power to suspend, but merely prescribed and limited the conditions under which these powers may be exercised. There is no conflict in the two acts: Bragdon v. Ries, 346 Pa. 10.

If a police officer is suspended by the burgess and council takes no action at its next regular meeting, the suspension expires and the police officer retains his position: Grumblis v. Boro of Luzerne, 35 Luz. 409 (1941); Goehring's Appeal, 57 D. & C. 256 (1946).

Therefore, when plaintiff police officer walked out of the January 3rd council meeting, his suspension had expired and he was at that moment again a duly authorized police officer of the borough. The thrust of plaintiff's argument is that council must take action. With this position, we cannot agree. To so hold would clearly be to pervert the plain language of the statute

which reads that "council *may* suspend, discharge, reduce in rank or reinstate the policeman". There is no mandatory language requiring council to take any positive action.

"Words . . . shall be construed . . . according to their common and approved usage. . . .": Statutory Construction Act, 46 PS §533.

The word *shall* is, however, generally regarded as imperative, but a court looks to the intention and purpose of the statute in determining whether the word is to be given a permissive or imperative meaning: Amalgamated Transit Union v. Port Authority of Allegheny Co., 417 Pa. 299.

Whether a particular statute is mandatory or directory does not depend upon its form but upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object and the consequences that would result from construing it one way or the other: Pleasant Hills Borough v. Carroll, 182 Pa. Superior Ct. 102.

We recognize that where a statute directs the doing of a thing for the sake of justice, the word "may" means the same thing as "shall": Hotel Casey Co. v. Ross, 343 Pa. 573. However, we are in full accord with the holding of Kanai v. Board of Undertakers, 63 Dauph. 103. We quote therefrom as follows:

"In our opinion, the rule as stated in 50 Am. Jur., Statutes, Sec. 31, p. 53 is here controlling to the effect that 'The interpretation of permissive terminology as mandatory may be made only where the context or subject matter compels such construction, or where it is necessary to give effect to the clear policy and intention of the legislature.' See also 26 Words & Phrases, Perm. Ed. p. 806, et seq."

We respectfully disagree with those lower courts which hold that council must act and make one of the

four decisions enumerated. We can find nothing in connection with the language of this statute which requires an unusual interpretation of the word *may* as found therein, nor do we perceive any injustice from a permissive construction. In fact, if the word *may* in this statute is interpreted to mean *shall,* it either requires council to do a useless thing, to wit: state affirmatively what the law has already stated; or it prevents them from upholding the burgess without creating a possible liability for plaintiff's compensation.

Suppose, for example, it was the desire of council to suspend plaintiff. It is obvious that such suspension could only take effect following its meeting with the police officer, as the police officer was already suspended prior to the meeting by the mayor. It would be useless to require council to suspend a second time a person who had already been legally suspended and for the same period of time.

Again, suppose council desires to discharge the person or reduce him in rank. This could only be effective on or subsquent to the meeting date of council. The only action which council may take which adds as a check or a rebuke or a repudiation of what the mayor has already done is to reinstate the policeman. To reinstate means to place again in a former position. Since the law already in effect reinstates the police officer, if council takes no action, to give this language any meaning, the reinstatement would have to apply to the period for which the mayor had already suspended the police officer. This they did not do.

On the other hand, suppose council desired to sustain or uphold the mayor and it was their intention that the police officer, as a penalty for failure to perform his duties, should not be paid. It was their desire also that this penalty was sufficient in itself and that

the police officer should be allowed to go back to work as he had learned a lesson. What should council have done at its next regular meeting? This action is not one of the four options set forth in the statute. The only way they could accomplish this result would be to discuss the matter, then leave everything in statu quo by taking no action.

Plaintiff argues that the legal effect of council's failure to act is a repudiation of the burgess and a reinstatement of the police officer. We do not so interpret the act. If council had reinstated plaintiff, the possible liability for compensation would arise. To avoid this possibility in the future, the legislature has amended this section to provide that when council reinstates, it is with pay.* Now if council reinstates, it must be with pay.

Plaintiff argues that since council took no action, its legal effect was to deny him his day in court. He argues that if council had sustained the suspension of the burgess, then plaintiff would be entitled to appeal to the Police Civil Service Commission. This is exactly what council did. We believe that council is presumed to know the law. After discussing , the matter with the police officer present, they elected to do nothing, which, in effect, sustained the burgess' action and allowed the police officer to go back to work

---

* Section 1124 of the new Borough Code of February 1, 1966, P. L. (1965) 1656, 53 PS §46124, provides, in part, as follows:

". . . Council may, . . . suspend, discharge, reduce in rank, or reinstate *with pay*, such policeman". (Emphasis supplied.)

The historical note following this section in Purdon's Statutes reads as follows:

"The words 'with pay' were inserted at the end of the first sentence to make it clear that if the man is reinstated after suspension, it is to be with pay".

We have made an exhaustive search for additional legislative history pertaining to this problem and find none.

following the meeting. If plaintiff can appeal to the Police Civil Service Commission in one case, certainly he may do so in the other. The Civil Service Commission statute specifically states that no person shall hereafter be suspended, removed or reduced in rank as a paid employe in any police force except in accordance with the provisions of the act.

In addition, plaintiff is still not denied his day in court, as is witnessed by the fact that he is now maintaining this action in assumpsit. However, if he is in the proper forum, we believe it incumbent upon him to show that his suspension was not for proper cause. His only complaint is that council took no action. Since this is not illegal, it is mandatory that plaintiff must allege and prove that he was improperly suspended without cause. Otherwise, he may be compensated unjustly. This case is not governed by that line of cases where the suspension was illegal. The legality of the burgess' suspension is not challenged.

It should be distinctly understood that this case differs decidedly from those where borough council is bypassed by an aggrieved party going directly to the Police Civil Service Commission. Here, the police officer for all intents and purposes had a hearing before council. He had his day in court. While council was troubling itself discussing plaintiff's problem, he chose to remain silent. Council decided to impose no penalty. Likewise, we believe it to be a fair assumption that they saw no injustice to correct. The status quo was a proper solution. Under present law, the only time council needs to take affirmative action is when they want to suspend for an additional period, discharge, reduce in rank or reinstate with pay.

It is not foreign or repugnant in our society for an employe to be suspended or have pay withheld for failure to perform duties. Plaintiff here was charged

218

with the failure to perform his duties. The law was properly followed by the mayor who has disciplinary powers. Council, by failure to act, approved of the actions of the mayor.

In summary, we hold that plaintiff cannot recover for the following reasons:

1. Council did not reinstate him.

2. Even if council by inaction had reinstated plaintiff, there is nothing to indicate that it was to be with pay.

3. Council approved of the action of the mayor, to wit, plaintiff's suspension without pay, by their refusal or failure to take any action modifying or changing the mayor's order.

4. Plaintiff failed to pursue his remedy with the Police Civil Service Commission.

5. Plaintiff has failed to allege and prove an illegal or improper suspension without cause.

And now, May 15, 1967, we, therefore, find for defendant, Borough of Philipsburg.